**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| APRIL KEISHA LAYNE, | § | |
| INDIVIDUALLY, AND AS A | § | |
| REPRESENTATIVE OF THE ESTATE | § | SA-21-CV-00558-XR |
| OF ALDWYN LAYNE. | § | |
| *Plaintiffs* | § | |
| | § | |
| -vs- | § | |
| | § | |
| ESPLANADE GARDENS SENIOR, INC., | § | |
| SILVERCREST PROPERTIES, LLC, | § | |
| *Defendants* | § | |

**ORDER ON MOTION TO DISMISS**

Before this Court is Defendants' Motion to Dismiss (ECF No. 29) challenging Plaintiffs' ability to state a claim upon which relief can be granted, and Plaintiffs' response (ECF No. 30). After careful consideration, the Court issues the following order.

I.       Background

April Keisha Layne brings this suit both as an individual and as a representative of the estate of Aldwyn Layne ("Plaintiffs"). Defendant Esplanade Gardens Senior, Inc owns and operates the Esplanade Gardens Assisted Living home ("EGS") where Aldwyn Layne resided; Defendant Silvercrest manages EGS (together, "Defendants").

On July 13, 2019, Mr. Layne moved into EGS. He was placed in the memory care unit. ECF No. 26 ¶ 10. At that time, Plaintiffs allege Mr. Layne had a high cognitive function, as indicated by his score of 27/30 on the "Mini Mental Exam," a cognitive performance exam. *Id*. ¶ 12.

On August 28, 2019, Mr. Layne fell and was taken to a hospital. Afterwards, he was placed on psychiatric medicines. After that point, Mr. Layne expressed suicidal thoughts, paranoid delusions, and would lock himself in his room. *Id*. ¶ 14.

Between July 13, 2019 and August 27, 2020, Mr. Layne's cognitive function decreased. *Compare* ¶ 12 (score on Mini Mental Exam of 27/30) *with* ¶ 15 (score of 15/30).  On November 30, 2020, Mr. Layne struggled to walk to the bathroom and exhibited seizure-like behaviors. *Id.* ¶ 17. He was transported to a hospital, and at the hospital was diagnosed with kidney injury and pneumonia due to COVID-19. *Id.* ¶ 18. He was also severely dehydrated and exhibited a BUN level of 88mg/dl. *Id.* ¶ 47. On December 11, 2020, Aldwyn Layne died.  The death report lists COVID-19 infection as the cause of death.

Plaintiffs bring negligence and gross negligence claims against Defendants. First, Plaintiffs argue that EGS insufficiently monitored Mr. Layne, housed him in EGS's memory care unit long after his condition deteriorated past their capabilities, and that this ultimately led to Mr. Layne falling and suffering an acute head injury and lacerations. Unrelated to the fall, Plaintiffs also object to Defendants' handling of the coronavirus pandemic ("COVID-19"), arguing that Defendants' lack of precautions caused Mr. Layne to contract COVID, develop pneumonia, and ultimately die.

II.     Procedure and subject matter jurisdiction

Plaintiffs originally filed suit in the 43rd Judicial District of Bexar County, Texas as Cause No. 2021CI07904 on April 22, 2021. ECF No. 1 at 1. On June 11, 2021, Defendants removed the case to federal court based on both federal question jurisdiction and diversity jurisdiction. ECF No. 1. There is no pending motion to remand, but the Court nevertheless must ensure itself of jurisdiction. There is no federal question jurisdiction, but this Court has diversity jurisdiction over this case.[1]

---

[1] Defendants' federal question arguments relied on the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C.A. § 201, et seq, and the doctrine articulated in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). ECF No. 1 at 3. The Fifth Circuit has rejected these arguments on 3 occasions while considering near-identical facts. *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 586 (5th Cir. 2022)

Aldwyn Layne was a citizen of Texas[2] and it is uncontested that both defendants are incorporated in the state of Minnesota and their principal places of business are in Minnesota as well.  As the removing party, Defendants must show that the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The amount in controversy is determined at the time of removal. *Gebbia v. WalMart Stores, Inc*., 233 F.3d 880, 883 (5th Cir. 2000). Defendants allege that "Plaintiff's state court petition asserts damages in excess of the amount in controversy requirement." ECF No. 1 at ¶ 93.

Plaintiffs do not clearly plead damages in excess of $75,000.  Instead, Plaintiffs' complaint lists economic damages and non-economic damages "*in excess of the minimal jurisdictional amount of this Court*," interest, and costs. ECF No. 1-3. However, it is facially apparent that Plaintiffs' claims exceed $75,000. The Fifth Circuit has established a framework to determine the amount in controversy when "the petition is silent (as is often the case in state courts in our jurisdiction)." *Guijarro v. Enter. Holdings, Inc.,* 39 F.4th 309, 314 (5th Cir. 2022). Defendants must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000 in one of two ways: (1) by demonstrating that it is "facially apparent" that the claims are likely above $75,000, or (2) "by setting forth the facts in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount." *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999).

Severe injuries, hospitalization, pain and suffering, and loss of consortium can all prompt findings that the amount in controversy is satisfied. *See Luckett*, 171 F.3d at 298 (holding that

---

("The Act does not completely preempt Mitchell's state-law negligence claims."); *Manyweather v. Woodlawn Manor, Inc*., 40 F.4th 237 (5th Cir. 2022) (affirming *Mitchell*); *Perez on behalf of Est. of Lozano v. Se. SNF, L.L.C.*, No. 21-50399, 2022 WL 987187 (5th Cir. Mar. 31, 2022). Therefore, neither the PREP Act nor the *Grable* doctrine provide a basis for federal question jurisdiction.
[2] Representatives of estates must use the decedent's citizenship for diversity purposes. 28 U.S.C. § 1332(c)(2).

damages for property, travel expenses, an emergency ambulance trip, six days in the hospital, pain and suffering, humiliation, and the temporary inability to do housework can exceed $75,000); *Guijarro v. Enter. Holdings, Inc.,* 39 F.4th 309, 314 (5th Cir. 2022) (finding amount in controversy satisfied when plaintiff asserted damages for medical expenses, physical disfigurement, physical pain and mental anguish, loss of earning capacity, punitive damages, treble damages, and attorney's fees); *De Aguilar v. Boeing Co.,* 11 F.3d 55, 57 (5th Cir. 1993) ("It is facially apparent that the claims in this case—claims for wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses—did exceed $50,000 at the time of removal."); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) (alleging damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement satisfied the amount in controversy requirement).

Plaintiffs allege economic and non-economic damages. They include (1) two different hospitalizations and overnight stays, (2) ambulatory transport to the hospitals from the senior center, (3) treatment for a laceration requiring stitches, pneumonia, and COVID-19, (4) medications, and (5) funeral expenses. In addition, Plaintiffs seek exemplary damages for gross negligence.   Defendants have established that the amount in controversy exceeds the sum or value of $75,000.

III.    Discussion

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

Defendants argue that the Public Readiness and Emergency Preparedness Act ("PREP Act") provides exclusive federal question jurisdiction and civil immunity to this suit and, accordingly, that their motion to dismiss should be granted. As noted above, the Fifth Circuit has rejected these arguments. *See Manyweather v. Woodlawn Manor, Inc.,* 40 F.4th 237 (5th Cir. 2022) (PREP Act does not preempt state-law negligence claims), *Perez on behalf of Est. of Lozano v. Se. SNF*, L.L.C., No. 21-50399, 2022 WL 987187, at *2 (5th Cir. Mar. 31, 2022) (PREP Act does not provide for complete preemption nor does the *Grable* doctrine apply). To the extent that Defendants believe that they have any federal or state defenses to the negligence claims, including defenses under the PREP Act or Tex. Civ. Prac. & Rem. Code §§ 148.003 and 74.155, such

defenses do not affect whether Plaintiffs have sufficiently pled causes of action for negligence and gross negligence. Any such defenses cannot be attacked under Fed. R. Civ. P. 12(b)(6), but rather by way of a motion for summary judgment.[3] There are numerous fact issues that must be addressed to determine whether Defendants are successful in their defenses. Accordingly, we only need analyze whether Plaintiffs have sufficiently pled causes of action for negligence and gross negligence.

A. **Negligence**

Defendants argue that Plaintiffs' recitations of negligence are "threadbare." The Court disagrees.

Plaintiffs argue that Defendants had a duty to provide a level of care and treatment that an otherwise reasonable, prudent, and similar assisted living and memory care facility and staff would provide under the same, or similar, circumstances. ECF No. 26 ¶ 25. Plaintiffs allege that this required EGS to "only accept residents who are appropriate for the level of care provided," *id*. ¶ 36, and once accepted, to exercise the degree of care required by a patient's "known physical conditions," *id*. ¶ 34.

Plaintiffs argue that this duty was breached because "Mr. Layne had a history of falls in the facility" and that this risk was compounded by his "psych status and behavior." *Id*. ¶ 44-25. Plaintiffs note that Mr. Layne's "service plan was not updated to include provision of assistance with ambulation and assistance with bed mobility," thereby implying that his plan was never updated. *Id*. ¶ 45. Further, Plaintiffs claim the duty of care was breached when EGS admitted Mr. Layne to their memory care unit, despite his "scoring a 27/30 on the Mini Mental Examination." *Id*. ¶ 37. It was further breached almost one year later when Mr. Layne began showing signs that

---

[3] The Court renders no opinion as to whether Defendants' defenses have any merit or would be successful.

he needed additional care. Specifically, Mr. Layne "express[ed] homicidal and suicidal ideation," and "was barricading himself in rooms with wheelchairs." *Id*. ¶ 39. Plaintiffs argue that at this point, Mr. Layne "was not appropriate for memory care and ALF placement retention." *Id*. As further evidence that Mr. Layne needed more than EGS could offer, Plaintiffs point to his medical record which shows he came to the hospital severely dehydrated. *Id*. ¶ 47. Plaintiffs claim that "this state of dehydration and appearing ill would be something that nursing staff of Esplanade could and should have recognized as evolving over at least two days prior to Mr. Layne's being sent out of the facility." *Id*. Plaintiffs claim that appropriate action would have been for EGS to refer Mr. Layne to a higher level of care. *Id*. ¶ 49.

Plaintiffs further plead that the facility was understaffed, failed to provide adequate personal protective equipment, failed to adequately implement social distancing, failed to provide Mr. Layne with adequate hydration, and failed to transfer him to an adequate medical facility until such time as testing revealed a "BUN of 88mg/dl, placing him at a severely diminished likelihood of survivability" as well as diagnoses of pneumonia, kidney injury, and COVID-19. *Id*. ¶ 18-48. Plaintiffs have adequately pled a negligence cause of action.

B. Gross Negligence

For the reasons stated above, Plaintiffs have also adequately pled a cause of action for gross negligence.  Relying upon the allegations above, Plaintiffs assert that there existed "an extreme degree of risk, considering the probability and magnitude of potential harm, of which Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference and/or malice with regard to the rights, safety, or welfare of others." *Id*. ¶ 64. Defendants argue that Plaintiffs have stated mere conclusory claims for gross negligence. This

argument fails to consider that Plaintiffs also rely upon "the above-cited acts," which, once incorporated, give rise to a plausible claim of gross negligence.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 29) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 24th day of October, 2022.

Xavier Rodriguez
United States District Judge